# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DANIAL L. CARTER and JONI L. CARTER, husband and wife, | ) ) ) | CASE NO. 8:08CV27 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CARGILL, INCORPORATED, a Delaware Corporation, | ) ) ) | |
| | ) | ORDER |
| Defendant/ Counter-Claimant, | ) ) ) | |
| v. | ) ) | |
| MIKE PRUITT TRUCKING, and BREINIG FARMS, INC., | ) ) ) | |
| Defendants/ Counter-Defendants | ) ) ) | |

This matter is before the Court on the Motion for Judgment on the Pleadings (Filing No. 77) submitted by Defendants Mike Pruitt Trucking ("Pruitt") and Breinig Farms, Inc. ("Breinig") pursuant to Fed. R. Civ. Pro. 12(c). Upon review of the pleadings and applicable law, the Court finds that the Defendants' Motion should be granted, in part. Specifically, the Court will dismiss the counterclaim filed by Defendant Cargill, Inc. ("Cargill") against Pruitt and Breinig, and will grant Cargill's request for leave to file an amended counterclaim. (*See* Filing No. 88, p.14). Cargill will be allowed to file an amended counterclaim to correct the deficiencies noted below.

## FACTUAL BACKGROUND

This is a personal injury case involving claims based on theories of negligence, premises liability, products liability (on theories of both negligence and strict liability), and

loss of consortium, resulting from injuries that Danial Carter ("Danial") and his wife Joni Carter ("Joni") (collectively "the Carters") sustained as a result of an accident on May 21, 2007, at Cargill's fertilizer plant in Alma, Nebraska. (Filing No. 25).  On June 12, 2008, the Carters filed an amended complaint, listing Cargill as a Defendant and naming Pruitt (Danial's employer) and Breinig (the lessee of the truck Danial was driving) as Plaintiffs, for purposes of subrogation. (Filing No. 25).

The Carters alleged that on May 21, 2007, Danial "drove a semi-truck, owned by his employer [Pruitt], on to the premise[s] of Cargill's fertilizer plant in Alma, for the purposes of loading, unloading, and transporting chemicals contained in tank trailers owned by [Cargill]." (Filing No. 25 at ¶ 8).  The Carters further allege that while Danial was on Cargill's premises, he was asked to climb a ladder attached to the side of Cargill's tank trailer in order to "guide [Cargill's] rigid and brittle 'stinger,' a spout used to pour liquids into the tank trailer, into the proper position." (Filing No. 25 at ¶ 9).   The Carters contend that Cargill manufactured this ladder and failed to provide handrails, "either along the ladder steps or at the top." (Filing No. 25 at ¶ 10).

The Carters allege that while Danial was standing on top of the ladder, the stinger broke, "causing Dan[ial] to be knocked from the platform, off the side of the tank trailer and onto the ground." (Filing No. 25 at ¶ 11).  Danial fell ten feet to the ground, "landing on both of his heels with such force that he completely shattered his right heel and sustained a fracture in his left heel." (Filing No. 25 at ¶ 13).  The Carters assert that Cargill knew its "stinger/spout devices were rigid and brittle because [Cargill] had them break in the past." (Filing No. 25 at ¶ 12).

On June 26, 2008, Cargill filed its answer to the amended complaint. (Filing No. 28). Cargill asserted a counterclaim against Pruitt and Breinig, raising three claims for relief based on indemnity, contribution, and breach of contract. (Filing No. 28). In its counterclaim, Cargill alleged that it entered into two agreements (a Motor Transportation Agreement ("MTA") and a Trailer Rental Agreement ("TRA")) with Breinig pursuant to which Breinig agreed to provide trucking services for Cargill, and Cargill agreed to Breinig's use of Cargill's trailer units to transport fertilizer, water, grain, and agricultural chemical products. (Filing No. 28 at ¶¶ 66-69). Both agreements contained indemnification provisions. (*See* Filing No. 28 at ¶¶ 67-68). Cargill argues that Breinig agreed to indemnify Cargill for all the Carters' claims; that Breinig refused to do so; and, as a result, that Breinig is in breach of the indemnification agreements.[1] (*See* Filing No. 28).

On August 7, 2008, Magistrate Judge F.A. Gossett issued an order pursuant to Fed. R. Civ. P. 21, realigning Pruitt and Breinig as Defendants in this matter. (*See* Filing No. 39). On August 20, 2008, Pruitt and Breinig filed a Reply to Cargill's counterclaim and raised their own crossclaim against Cargill. (*See* Filing No. 43). On October 13, 2008, Pruitt and Breinig, as Defendants, filed their answer to the Carters' amended complaint. (Filing No. 56).

On February 10, 2009, Pruitt and Breinig moved for judgment on Cargill's counterclaim, based solely on the pleadings, pursuant to Fed. R. Civ. Pro. 12(c). (Filing No.

---

[1] Although the MTA and TRA are agreements between Cargill and Breinig, Cargill has included Pruitt in its counterclaims, alleging that Pruitt "operates as a part of and under the authority and control of Breinig." (Cargill Counterclaim, at Filing No 28, ¶ 56). At this early stage of the proceedings, it appears to the Court that these entities have some common ownership, and the parties have chosen to leave the respective rights and responsibilities of these two entities undistinguished, one from the other, at this time.

77).  In their motion, Pruitt and Breinig deny any breach-of-contract, contribution, or indemnity claims, arguing that neither the MTA nor the TRA requires Pruitt or Breinig to indemnify Cargill for what Pruitt and Breinig contend were purely acts of Cargill's own negligence. (Filing No. 79 at 3).  Pruitt and Breinig further argue that Cargill is not entitled to indemnity for liability arising from any claims for products liability under a strict liability theory. (Filing No. 79 at 7).  Defendants Pruitt and Breinig also assert that Neb. Rev. Stat. § 48-148 precludes Cargill's claims against them for contribution because they were Danial's "employers."  (Filing No. 79 at 9).

## STANDARD OF REVIEW

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Syverson v. FirePond, Inc.*, 383 F.3d 745, 749 (8th Cir. 2004).  "An issue of fact is deemed to be material if the outcome of the case might be altered by its resolution one way rather than another." *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters and Butcher Workmen of N. Am., AFL-CIO*, 627 F.2d 853, 855 (8th Cir. 1980).  In evaluating a motion for judgment on the pleadings, the Court will "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *United States v. Any and all Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000).

**DISCUSSION**

**1.      Does Neb. Rev. Stat. § 48-148 preclude Cargill's Claim for Contribution?**

Pruitt and Breinig argue that the Nebraska Workers' Compensation Act, at Neb. Rev. Stat. § 48-148, makes claims for contribution "not available against an employer." (Filing No. 79 at 9).   The Nebraska Supreme Court has considered this issue and concluded that "nothing in the Nebraska Workers' Compensation Act, by express provision or implication, and nothing in the public policy of the State of Nebraska[,] prevents an employer's contractual obligation to indemnify a third party concerning a loss sustained through the third party's payments to the indemnitor's employee." *Union Pacific R. Co. v. Kaiser Agr. Chemical Co.*, 425 N.W.2d 872, 879 (Neb.1988).   The Nebraska Supreme Court has stated that "when an employer, liable to an employee under the Nebraska Workers' Compensation Act, agrees to indemnify a third party for a loss sustained as the result of the third party's payment to the indemnitor's employee, the employer's exclusion from liability accorded by the Workers' Compensation Act does not preclude the third party's action to enforce the indemnity agreement with the indemnitor-employer." *Oddo v. Speedway Scaffold Co.*,  443 N.W.2d 596, 601-602 (Neb. 1989).

Pruitt and Breinig's claim that Neb. Rev. Stat. § 48-148 precludes Cargill from seeking contribution from them is without merit.  Instead, the Court will dismiss Cargill's counterclaim for indemnity and contribution based on the Court's findings in regards to the two indemnification agreements and the deficiencies in Cargill's pleadings as discussed in greater detail below.

**2.      Does the MTA or RTA Require Pruitt and Breinig to Indemnify Cargill for the
         Carters' Claims?**

In their Motion for Judgment on the Pleadings, Pruitt and Breinig argue that neither
the MTA nor the RTA requires them to indemnify Cargill for acts caused by Cargill's own
negligence.  In response, Cargill asserts that the MTA and the RTA, when properly read
under Minnesota and Nebraska law respectively, do require Pruitt and Breinig to indemnify
Cargill for its own negligent acts.  In the alternative, Cargill contends that its pleadings in
this case allege sufficient acts of negligence on the part of Pruitt and Breinig to support
Cargill's claim for indemnification/contribution against them based on their own negligent
acts.   Upon review of the MTA, RTA, the pleadings, and applicable law, the Court
concludes that neither the MTA nor the RTA requires Pruitt and Breinig to indemnify Cargill
for its own negligence.  The Court also concludes that Cargill's pleadings do not allege
sufficient negligent acts on the part of Pruitt and Breinig to support Cargill's assertion that
its indemnification claim is based on Pruitt and Breinig's own negligence, as opposed to
Cargill's negligence.    Accordingly, the Court will dismiss Cargill's counterclaim for
indemnification, contribution, and breach of contract.[2]

**A.      The Motor Transportation Agreement (MTA)**

Both parties agree that, under its own terms, the MTA is governed by Minnesota
law.  (*See* Filing No. 78, Attachment #1, Section 13).  Under Minnesota law, "[a]greements

---

[2] In Cargill's counterclaim, Cargill bases its third claim for relief on alleged breach
of contract, arguing that Breinig's failure to indemnify Cargill for the Carters' claims
constituted a breach of both the MTA and the RTA.  Because the Court finds that neither
the MTA nor the RTA requires Breinig to indemnify Cargill for the Carters' claims, the Court
will dismiss Cargill's counterclaim for breach of contract as moot.

seeking to indemnify a party for losses resulting from that party's own negligent acts are not favored and are not construed to provide indemnification, unless such intention is expressed in clear and unequivocal terms." *Oster v. Medtronic, Inc.* 428 N.W.2d 116, 118 (Minn. Ct. App. 1988). "Indemnity agreements are to be strictly construed when the indemnitee seeks to be indemnified for its own negligence." *Nat'l Hydro Sys., a Div. of McNish Corp. v. M.A. Mortenson Co.*, 529 N.W.2d 690, 694 (Minn. 1995). Consequently, the Minnesota Supreme Court has "been reluctant to impose indemnity unless [the Court has been] able to identify some specific language expressing an intent to indemnify the indemnitee for claims arising out of its own negligence." *Id.*

In *National Hydro Systems*, the Minnesota Supreme Court concluded that the indemnification agreement did not entitle the indemnitee to indemnification for its own negligent acts. *Id.* The Minnesota Supreme Court reasoned that the agreement's language stating that the obligation to indemnify extended to those claims "which arise out of or result from performance of the work by contractor" (the indemnitor) was sufficient to demonstrate that the agreement applied only to the negligent acts of the indemnitor, and not the indemnitee. *Id.*

In the present case, the MTA limits Breinig's (the indemnitor's) liability to indemnify Cargill in the following manner:

> Carrier [Breinig] agrees to indemnity, defend and hold harmless Cargill, its directors, officers, employees, agents or representatives and its successors or assignees, from and against any injury, damage, claims, suits, fines, penalties or loss, including but not limited to, reasonable attorney fees, to the extent such injuries, damages, or losses arise from i) Carrier's performance or attempted performance hereunder, ii) any negligent, reckless, or willful misconduct of Carrier, or its employees or agents, iii) any act or omission of Carrier or its employees or agents, or iv) the breach of any obligation or covenant contained in this Agreement.

7

(Filing No. 78, Attachment #1, Section 8).  While the MTA includes a great deal of language holding Breinig liable for its own negligent acts during its performance and the acts of its agents and employees, the MTA contains no "specific language expressing an intent to indemnify the indemnitee [Cargill] for claims arising out of its own negligence." *Nat'l Hydro Sys.,* 529 N.W.2d at 694.  The MTA refers to acts that arise from the Carrier's (Breinig's) performance only.  Without any specific language in the MTA to indemnify the indemnitee (Cargill) for its own acts of negligence, this Court cannot infer an intent on behalf of the parties to indemnify Cargill for its own negligence. *Id.*

Cargill cites to several decisions in which Minnesota courts concluded that certain indemnification agreements entitled the indemnitee to indemnification for its own negligent acts.  None of the cases Cargill cites, however, persuades the Court that the language of the MTA can be construed to afford such indemnification.

First, Cargill cites to the Minnesota Supreme Court's decision in *Johnson v. McGough Const. Co., Inc.*, 294 N.W.2d 286 (Minn. 1980), *superseded by statute*, Minn. Stat. § 337.02 (1994).  In *Johnson*, the Minnesota Supreme Court reasoned that an indemnification agreement required a sub-contractor to indemnify the general contractor for the general contractor's own negligent acts where the agreement's language required the sub-contractor to "save harmless the [general] Contractor, his agents and employees from all such claims including without limiting the generality of the foregoing, ***claims for which the Contractor may be, or may be claimed to be, liable*** . . ." *Id.* at 287 (emphasis added).  In reviewing the specific language requiring the sub-contractor to indemnify the general contractor for "claims for which the Contractor may be, or may be claimed to be,

liable[,]" the Minnesota Supreme Court held that the indemnification agreement "necessarily includes claims of the [general] contractor's negligence." *Id.* at 288.

The MTA in this case differs significantly from the agreement at issue in *Johnson*. Here, the MTA makes no reference to any claims "for which [Cargill] may be, or may be claimed to be, liable." Instead, the MTA refers only to acts resulting from Breinig's performance, attempted performance, or the acts of its agents and employees. The Court concludes that *Johnson* provides no insight on the issue of indemnification in this case.

The Court also finds Cargill's reference to *Bogatzki v. Hoffman*, 430 N.W.2d 841, 845 (Minn. Ct. App. 1988), unpersuasive. In *Bogatzki*, the Minnesota Court of Appeals concluded than the indemnification clause in dispute was broad enough to include the indemnitee's negligent acts. *Bogatzki*, 430 N.W.2d at 845. The indemnification clause at issue in *Bogatzki* also differs substantially from that in the MTA. The *Bogatzki* dispute involved an indemnification clause between a landlord, the indemnitee, and a tenant, the indemnitor. *See, id.* Upon reviewing the agreement, the *Bogatski* Court found that "[t]he lease provision indemnified [the landlord] for claims of personal injury, wrongful death and property damage." *Id.* The *Bogatzki* Court reasoned that "[p]ersonal injury and wrongful death actions are usually based, at least in part, on claims of negligence" and thus the inclusion of "the term 'negligence' would not have more clearly expressed the scope of indemnity and may actually have raised a question whether the provision applied only to negligence." *Id.*

This Court finds such reasoning inapplicable to the MTA. The Court cannot conclude that references to the "Carrier's performance" in the indemnification agreement

are broad enough to encompass claims based on the indemnitee's negligence. Cargill's reference to *Osgood v. Medical, Inc.*, 415 N.W.2d 896, 902-03 (Minn. Ct. App. 1987) is similarly unpersuasive. *See Osgood*, 415 N.W.2d at 902.[3]

Upon review of the MTA and the applicable Minnesota law, this Court finds the MTA contains no "specific language expressing an intent to indemnify the indemnitee for claims arising out of its own negligence." *Nat'l Hydro Sys.*, 529 N.W.2d at 694. This Court cannot conclude that the MTA's language is broad enough to encompass negligent acts that Cargill may commit at its own plant. The MTA between Breinig and Cargill, therefore, does not require either Pruitt or Breinig to indemnify Cargill for its own acts of negligence.

### B.     The Trailer Rental Agreement (TRA)

While the terms of the TRA contain no choice-of-law provision, the agreement was entered into and created by two Nebraska corporations for the performance of work in Nebraska. (*See* Filing No. 78, Attachment #2*).* Both parties agree that Nebraska law governs the terms of the TRA. (*See* Filing No. 79 at 6; Filing No. 88 at 12). Accordingly, the Court will apply Nebraska law to determine whether the terms of the TRA require Pruitt and Breinig to indemnify Cargill for its own negligence. Upon review of the TRA and

---

[3] In *Osgood*, the Court concluded that the language in an indemnification clause was sufficiently broad to include the indemnitee's own acts of negligence where the clause contained language stating that "'[t]he customer shall assume full responsibility with respect to the use of any component or information furnished by Gulf [the indemnitee] hereunder, and it is mutually agreed that Gulf [the indemnitee] assumes no liabilities of any kind with respect to the use by the customer or by any third party of such components or information.'" *Osgood*, 415 N.W.2d at 902. While it was reasonable for the court in *Osgood* to conclude that an indemnification clause wherein a customer agreed to indemnify the producer of a product would necessarily include claims that arose from the producer's own negligence in manufacturing the product, this Court concludes that such reasoning does not apply to the facts presented here.

applicable Nebraska law, the Court concludes that the TRA does not require either Pruitt or Breinig to indemnify Cargill for its own negligent acts.

Under Nebraska law, "'[a]n indemnitee may be indemnified against his own negligence if the contract contains express language to that effect or contains clear and unequivocal language that that is the intention of the parties.'" *Oddo*, 443 N.W.2d at 602 (quoting *Omaha Public Power Dist. v. Natkin & Co.*, 227 N.W.2d 864, 867 (Neb. 1975)). In the present case, the TRA does not "contain clear and unequivocal language" evidencing an intent on behalf of the parties to hold Breinig liable for Cargill's negligent acts.

The TRA describes Breinig's liability to indemnify Cargill in the following manner:

> Trucker [Breinig] agrees that it shall be fully responsible for, and shall indemnify and hold Cargill harmless from and against, any and all injuries to or death of any person or persons and any and all damage to or destruction of any property or properties caused by or arising out of the acts or omissions of Trucker in the performance of or failure to perform under this agreement. In addition, Trucker shall be fully responsible for procuring and maintaining, and shall hold Cargill harmless from and against, all wages, unemployment compensation, and workers' compensation for Trucker's employees, agents, and independent contractors.

(Filing No. 78, Attachment #2, ¶ 7). The TRA's language indicates that Breinig has agreed to indemnify Cargill for any injuries or accidents resulting from *its own performance* under the contract. Specifically, the agreement refers to Breinig's performance by stating that Breinig will indemnify Cargill for "any and all damage to or destruction of any property or properties caused by or arising out of the acts or omissions of Trucker [Breinig] in the performance of or failure to perform under this agreement. " (Filing No. 78, Attachment #2, ¶ 7). While the TRA explicitly mentions damage/injuries arising from Breinig's

performance, the TRA makes no mention of liability for damages/injuries arising from Cargill's performance under the contract.

Cargill argues that the Nebraska Supreme Court's decision in *Oddo*, holding that an indemnification clause required an indemnitor to indemnify the indemnitee for its own acts of negligence, provides authority for this Court to make a similar ruling. *See Oddo*, 443 N.W.2d at 602. In *Oddo*, however, the Nebraska Supreme Court found language within the indemnification agreement to support its conclusion that the parties intended the agreement to provide indemnification for the indemnitee's own negligent acts. *Id.* In evaluating a lease agreement between a lessor and a lessee, the Nebraska Supreme Court held that "the lease declared that the purpose of the indemnity clause was 'TO SHIFT THE RISK OF ALL CLAIMS RELATING TO THE LEASED PROPERTY TO THE LESSEE DURING THE ENTIRE TERM OF THIS LEASE.'" *Id.* The Nebraska Supreme Court concluded that "[a]lthough the lease's indemnity clause does not contain the word negligence, the intended consequence of indemnity is expressed clearly and unequivocally – Contractor was obligated to indemnify Speedway [the lessor/indemnitee] concerning claims arising from Speedway's conduct, including negligence, but excluding claims based on Speedway's willful misconduct." *Id.*

The TRA between Cargill and Pruitt differs and is distinguishable from the indemnification agreement at issue in *Oddo*. The TRA does not assign liability in regards to a piece of property or a location that one party is leasing to another. The TRA assigns liability for damage/injuries arising from acts committed by one party in the course of its performance of a contract between two parties. While it was reasonable for the Court in *Oddo* to conclude that a lease agreement designed to shift all liability arising from

damage/injuries occurring on the leased property away from the lessor and to the lessee would necessarily include damage/injuries arising from the lessor's own negligent acts, such an inference has no parallel support in the present circumstances. When two parties create an agreement that indemnifies one party for accidents arising from the other party's performance under a contract, the Court will not infer an intent to indemnify the non-performing party from its own negligent acts unless the agreement contains "clear and unequivocal language" to support that conclusion. *Id.* The TRA contains no such language.

Accordingly, the Court finds that the TRA does not require Pruitt or Breinig to indemnify Cargill for its own acts of negligence.

**C.     Whether Cargill has Pled Sufficient Facts to Establish Negligence on the part of Pruitt and/or Breinig**

Cargill suggests that if the MTA and the RTA do not require Pruitt and Breinig to indemnify Cargill for its own negligent acts, Cargill has pled sufficient facts to demonstrate that Danial and Joni's injuries were caused, at least in part, by Pruitt and Breinig's own negligent acts. Thus, Cargill contends that the MTA and the RTA require Pruitt and Breinig to indemnify Cargill for the Carters' injuries, to the extent those injuries were caused by Pruitt and Breinig. Upon review of all of the parties' pleadings in this matter, the Court finds that no party has pled sufficient facts to demonstrate that the Carters' injuries were caused, even in part, by Pruitt or Breinig's negligence. Instead, the pleadings contain factual allegations to support claims that the Carters' injuries were caused by Cargill's negligent acts. Because the pleadings do not contain factual allegations to support Cargill's

counterclaim, the Court will grant Pruitt and Breinig's motion and dismiss Cargill's counterclaim.

The negligent acts that parties have alleged in the pleadings are attributed to Cargill only. In their amended complaint, the Carters allege that Cargill defectively manufactured its ladder because Cargill "failed to provide handrails, either along the ladder steps or at the top" of the ladder. (Filing No. 25 at ¶ 10). The Carters assert that Danial was knocked to the ground because Cargill's stinger broke, and they allege that Cargill "knew that its stinger/spout devices were rigid and brittle because [Cargill] had them break in the past." (Filing No. 25 at ¶ 12). According to the Carters, Cargill was negligent because Cargill failed "to provide a reasonably safe stinger and safe working environment." (Filing No. 25 at ¶ 13).

The amended complaint does not allege that Pruitt or Breinig committed any negligent acts. (*See* Filing No. 25). Cargill's counterclaim against Pruitt and Breinig does not include any factual allegations from which it can be inferred that Pruitt and Breinig committed any negligent acts. (*See* Filing No. 28). Instead, Cargill's counterclaim merely states that "any and all injury caused Plaintiffs was caused by the negligence of Mr. Carter or some other person or entity." (Filing No. 28 at ¶ 65). While Cargill has denied the allegations of its own negligence, it has not successfully pled any negligence on the part of Pruitt or Breinig for which this Court could hold those parties responsible under the terms of the MTA or the TRA.

Cargill maintains that its additional statement that "Cargill and Breinig were jointly responsible for any alleged damages and thus any such liability should be apportioned between Cargill and Breinig and/or Pruitt" should suffice to survive Pruitt and Breinig's

12(c) Motion for Judgment on the Pleadings. (Filing No. 28 at ¶ 73). This Court cannot consider whether the MTA and RTA require Pruitt or Breinig to indemnify Cargill for the Carters' injuries when *no party* has pled any facts to support any inference that Pruitt or Breinig engaged in any act or omission that contributed to the Carters' injuries.

With no factual allegations that Pruitt or Breinig committed an act of negligence that caused or contributed to the Carters' injuries, the Court concludes that Pruitt and Breinig's Motion should be granted, in part. In granting the Motion, the Court also grants Cargill's request for leave to amend its counterclaim to address the deficiencies as set out in this Memorandum & Order.

## CONCLUSION

For the aforementioned reasons, the Court finds that Pruitt and Breinig's Motion for Judgment on the Pleadings should be granted, in part. The Court will dismiss, without prejudice, Cargill's counterclaim and will grant its request for leave to file an amended counterclaim.

IT IS ORDERED:

1.  The Motion for Judgment on the Pleadings (Filing No. 77) is granted in part;

2.  Defendant Cargill's counterclaim (Filing No. 28) is dismissed, in its entirety, without prejudice; and

3.  Defendant Cargill has leave to file an amended counterclaim on or before April 30, 2009.

DATED this 14th day of April, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

15